James R. **DAVIDSON**, et al., Plaintiffs,

v.

**ALLIS–CHALMERS CORPORATION,** et al., Defendants.

No. 80–0757–CV–W–9.

United States District Court, W.D. Missouri, W.D.

July 15, 1983.

Larry M. Brummet and Jay T. Grodsky, Brummet & Grodsky, Kansas City, Mo., for plaintiffs.

Mark Foster, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant Allis-Chalmers Corp.

Michael Gordon, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for defendants Unions.

MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR THE AWARD OF ATTORNEY'S FEES

BARTLETT, District Judge.

Plaintiffs James R. Davidson, Betty Hill and Lazell Miller alleged that Allis-Chalmers Corporation (Allis-Chalmers), United Steelworkers of America, and United Steelworkers of America, Local No. 1958 (unions) discriminated against each plaintiff because of his or her race. Davidson's claims against Allis-Chalmers were prosecuted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42

U.S.C. § 1981; his claims against the unions were asserted under § 1981. Hill's claims against Allis-Chalmers and the unions were prosecuted under Title VII and § 1981. Miller's claims against Allis-Chalmers and the unions were prosecuted under § 1981.

The claims of each plaintiff were severed for trial. The trials began June 1, 1982, and concluded June 21, 1982, a total of fourteen trial days. The same counsel represented each plaintiff in these back-to-back trials.

Davidson's trial began June 1, 1982, and concluded June 9, 1982. After the close of all the evidence, the Court announced from the bench its findings of fact and conclusions of law and ordered that judgment be entered in favor of defendants and against plaintiff, reserving the question of costs.[1]

At the beginning of the *Hill* trial on June 10, 1982, plaintiff Hill moved to dismiss both union defendants, and the motion was sustained. After plaintiff's evidence had been presented, the Court granted defendant Allis-Chalmers' motion to dismiss because upon the facts and the law, plaintiff Hill had shown no right to relief. On June 14, 1982, the Court announced its findings of fact and conclusions of law and ordered that judgment be entered in favor of Allis-Chalmers and against plaintiff, reserving the question of costs.[1]

On June 21, 1982, after the close of all the evidence in Miller's action, the Court announced from the bench its findings of fact and conclusions of law and ordered that judgment be entered in favor of defendants and against plaintiff, reserving the question of costs.[1]

On June 17, 1982, defendant unions filed and served their Motion for Attorney's Fees and Costs from Each Plaintiff and Plaintiffs' Counsel and for Notice and Hearing.

A supplemental memorandum supporting the motion was filed and served on June 22, 1982. Attached to the memorandum were affidavits of counsel, copies of correspondence and pleadings, and an itemization of fees and expenses for the period August, 1980, through May 31, 1982. Plaintiffs' response to defendant unions' motion, including counsel's affidavits, were filed on June 29, 1982.

On June 24, 1982, defendant Allis-Chalmers filed and served its Motion for the Award of Attorneys' Fees, Expenses and Costs against Each Plaintiff and Their Counsel. The supporting suggestions included a request for a hearing on the motion at which Allis-Chalmers would produce evidence of its costs, expenses, and fees. Plaintiffs and their counsel responded to Allis-Chalmers' motion on July 6, 1982.

As required by *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), a hearing on defendants' motions was held on August 2, 1982. Also taken up at that time was the lingering question of defendants' entitlement to costs, expenses, and attorneys' fees incurred when discovery was reopened in April, 1982, for the limited purpose of inquiring into emotional distress allegedly suffered by plaintiffs Hill and Davidson.

■ This Court has jurisdiction to pass upon claims for attorney's fees even though the plaintiffs filed notices of appeal on the merits of this litigation. The Supreme Court has recently decided that a motion requesting an award of attorney's fees is not a motion to alter or amend the judgment and, therefore, is not subject to the ten-day limit of Rule 59(e), *Federal Rules of Civil Procedure. White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

---

1. This opinion attempts to summarize succinctly the Court's reasoning and conclusions about awarding attorney's fees in these cases. To appreciate completely the gravity of the situation which the Court believes requires both the result and this opinion the findings of fact and conclusions of law announced by the Court in each trial as well as the transcript of each trial must be consulted. Therefore, they are incorporated herein. Even then, however, the reader is denied the history of pretrial proceedings which does so much to set the background for this Court's assessment of the need for the award of attorney's fees against plaintiffs and their counsel.

Although the differing views of the Fifth, Sixth, and Seventh Circuits and the Eighth Circuit were not resolved, Justice Blackmun in his concurring opinion commented that "the Court comes close to approving the position taken by the United States Court of Appeals for the Eighth Circuit in *Obin v. District No. 9, Int'l. Assn. of Machinists and Aerospace Workers,* 651 F.2d 574 (1981)." *Id.* at 456, 102 S.Ct. at 1168.

In *Obin* the Eighth Circuit stated that a post-judgment motion for attorney's fees raises a collateral and independent claim. Thus "there can be no question that the district courts retain jurisdiction to rule upon such motions notwithstanding entry of a judgment resolving the merits of the action." 651 F.2d at 583–84. The judgment on the merits is final for the purpose of appeal notwithstanding an undecided request for attorney's fees.

> The district court's order on the claim for attorney's fees is separably appealable as a final judgment and may be consolidated with any pending appeal on the merits of the action.

*Id.* at 584.

The general rule in federal courts is that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). In cases brought under Title VII, § 2000e–5(k) authorizes the Court to award attorney's fees to the prevailing party.

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ....

Similarly, 42 U.S.C. § 1988 provides that in § 1981 cases, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."

■ Prevailing defendants may be awarded attorneys' fees in a Title VII case under the standard provided in *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation ....

*... Hence, a plaintiff should not be assessed his opponent's attorney's fee unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.*

*Id.* at 421–422, 98 S.Ct. at 700 (emphasis added). This standard is consistent with Congress' intention to encourage vigorous enforcement of Title VII while protecting "defendants from burdensome litigation having no legal or factual basis." 434 U.S. at 421–422, 98 S.Ct. at 700.

■ The *Christiansburg Garment* standard should be applied in determining whether to award attorney's fees to a prevailing defendant under § 1988. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

The Eighth Circuit Court of Appeals has recognized that encouraging the vigorous enforcement of statutory prohibitions against employment discrimination must be balanced by concern for employers who must defend against meritless claims.

> Yet we are aware also of the accommodation to be made between congressional concerns on the one hand for the inability of low income minorities to bear the burden of attorney's fees and on the other for award of fees to those who must defend against unreasonable, frivolous, meritless or vexatious actions.

*Coleman v. General Motors Corp.,* 667 F.2d 704, 708 (8th Cir.1981).

■ Neither Title VII nor § 1988 mentions assessing attorney's fees against coun-

sel for the losing party. In *Roadway Express* the Supreme Court rejected the argument that 28 U.S.C. § 1927 authorized recovery of the prevailing party's attorney's fees from opposing counsel. However, federal courts do have the inherent power to assess attorney's fees against counsel in certain "narrowly defined circumstances." 447 U.S. at 765, 100 S.Ct. at 2463.

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes.

*Id.* at 766, 100 S.Ct. at 2464.

The Supreme Court remanded the case because the trial court "did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the Court's inherent powers." *Id.* at 767, 100 S.Ct. at 2464. "Bad faith" is not restricted to the circumstances surrounding the filing of the action but also may be found " 'in the conduct of the litigation.' " *Id.* at 766, 100 S.Ct. at 2464 (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1975)).

Shortly after the *Roadway Express* decision, Congress amended 28 U.S.C. § 1927 and specifically provided for the assessment of attorney's fees against counsel who unreasonably and vexatiously multiply proceedings. Section 1927 now provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927 (West Supp.1983).

■ Therefore, defendants' requests for the award of attorney's fees against plaintiffs will be determined by applying the *Christiansburg Garment* standard. Defendants' efforts to recover attorney's fees against plaintiffs' counsel will be determined by applying the *Roadway Express* "bad faith" standard and the § 1927 "vexatious multiplication of proceedings" standard.

### Defendant Allis-Chalmers' Request for Award of Attorney's Fees

#### Davidson

■ Turning first to the request of Allis-Chalmers for an award of attorney's fees against Davidson and his counsel, Davidson's claim was not meritless and he did not continue to litigate after his claim clearly became meritless. Although Davidson did not present persuasive evidence of disparate treatment, he did present some evidence tending to support a claim of racial discrimination. For example, his job class rating seemed low in relation to the length of his employment (although plaintiff failed to introduce any evidence from which the Court could accurately assess whether Davidson's job class was inordinately low for his years of service). Davidson and a white employee shared some shortcomings but the white employee was promoted to a lead position. However, it was also shown that the white employee's job performance was more highly rated than was plaintiff's. Because these facts provide some basis for Davidson's claim against Allis-Chalmers, the employer's request for an award of attorney's fees against Davidson will be denied.

Furthermore, counsel's conduct in handling Davidson's claims against Allis-Chalmers does not justify an award under either § 1927 or the bad faith standard. Therefore, Allis-Chalmers' request for an award of attorney's fees against Davidson's counsel will be denied.

#### Miller

■ Lazell Miller established that she had a serious medical impairment which limited her ability to stand while working. Miller presented evidence from which one might infer reasonably that certain management personnel showed some lack of

regard for her medical restriction. There was some evidence concerning the treatment of white employees with medical restrictions but it did not support the conclusion that plaintiff was treated differently from similarly situated white employees. Although Miller's evidence was sparse, the Court, ever mindful of the Congress' intent to promote vigorous enforcement of anti-discrimination laws, concludes that her action against Allis-Chalmers was not meritless and that she did not continue to litigate after her claim clearly became meritless. Allis-Chalmers' request for an award of fees against plaintiff Miller, therefore, will be denied.

Furthermore, counsel's conduct in handling Miller's claim against Allis-Chalmers does not justify an award under either § 1927 or the bad faith standard.

### · *Hill*

Hill simply did not establish any foundation for her claims of discriminatory treatment on a statutorily impermissible basis. Hill alleged that she had been terminated because of her race and/or sex and in retaliation for filing a charge of discrimination with the EEOC. The evidence showed, however, that Hill was terminated because she failed to respond to a letter from Allis-Chalmers, which she acknowledged receiving, stating that she would be terminated if she did not report to work within a certain number of days.

When asked to direct the Court's attention to facts which showed that plaintiff's claim was not meritless and that counsel had not prosecuted Hill's claim in bad faith, Hill's counsel stated that they believed Hill's account of attempting several times to return to work after her medical leave and finally being barred from the plant by Pinkerton guards stationed at the gate. However, the letter which Hill received from Allis-Chalmers after she was purportedly refused entry to the plant should have dispelled any idea that she had been terminated earlier. The letter gave Hill clear directions to follow in reporting back to work. Upon receipt of the letter, it was entirely within the plaintiff's power to prevent her own termination and she utterly failed to act upon the opportunity. Therefore, even if counsel fully believed plaintiff's account of her unsuccessful efforts to return to work, counsel should not have missed the legal and factual significance of the letter instructing Hill to report to work or be terminated. There is no claim by counsel that they were unaware of the letter, and the Court can only assume that it had come to their attention or should have come to their attention through their efforts during discovery.

The Court does not expect a layperson to appreciate the difference between a complaint which rises to the stature of a federal statutory violation and a complaint about employee-employer relations. However, the difference should have been readily discerned by counsel and communicated to the interested plaintiff. The Court, therefore, concludes that by pursuing this litigation beyond the discovery stage plaintiff continued to litigate a claim after it was clearly apparent that it was meritless. Also, prosecution of this litigation beyond discovery by Hill's counsel unreasonably and vexatiously multiplied the proceedings and was tantamount to bad faith.[2] There-

**2.** By focusing on the close of discovery, the Court is attempting to give plaintiffs and their counsel the benefit of the doubt. The meritless nature of this claim should have been apparent much earlier. A firmly held belief in injustice by people who receive unfavorable employment actions, unsupported by any reasonable basis for believing that there was unlawful discrimination, is not enough to insulate the party and counsel from responsibility to the opposing party and the system for pursuing meritless litigation. A plaintiff, responsibly seeking redress for unlawful discrimination, and know-

ledgeable counsel, attentive to their client's interests and to the burden placed on the judicial system by meritless litigation, would have brought this claim to a conclusion long before trial.

The date discovery closed is not clear. The parties advised the Court at a pretrial conference on December 2, 1981, that discovery was essentially completed. Thereafter, lingering discovery disputes plus the reopening of discovery on March 31, 1982, for a limited purpose, arguably extended the discovery period

fore, defendant Allis-Chalmers will be awarded an attorney's fee based on the amount of time reasonably expended in post-discovery trial preparation and in trial of Hill's claim.

In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court provided standards for determining the amount of a reasonable attorney's fee in all cases where Congress has authorized an award of fees to a "prevailing party." *Id.* 103 S.Ct. at 1939 n. 7.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

. . . .

> The product of reasonable hours times a reasonable rate does not end the in-

quiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."

*Id.* 103 S.Ct. at 1939–40.

The additional factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974) may also be considered although "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 103 U.S. at 1940 n. 9.[3]

From the detailed time records offered in evidence by Allis-Chalmers, its counsel reasonably spent 46.91 hours after April 30, 1982, in post-discovery trial preparation of the *Hill* case.[4] The hourly rates charged by Allis-Chalmers' attorneys were reasonable in light of their experience and the quality of their work. The product of the reasonable hours spent in post-discovery pretrial preparation times the reasonable hourly rates is $3,918.[5]

Plaintiff's counsel did not dispute the reasonableness of the $3,108 in attorney's fees incurred by Allis-Chalmers during the trial

---

to mid-April, 1982. Although the Court believes that plaintiffs had ample opportunity to complete their discovery before December 2, 1981, and essentially did so, the Court will use May 1, 1982, as the date when discovery was completed.

3. These factors were applied in *Cleverly v. Western Electric Co., Inc.,* 450 F.Supp. 507 (W.D.Mo.1978), aff'd, 594 F.2d 638 (8th Cir. 1979), which was cited as a particularly well-reasoned application in *Hameed v. International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 396,* 637 F.2d 506, 523 (8th Cir.1980). Under *Johnson* the following factors are to be considered: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney because of acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in other cases.

4. Although the time records do not specifically allocate most of the recorded time to the trial preparation of a particular case, it is reasonable to allocate to each case one-third of the time spent in post-discovery trial preparation of all three cases. Plaintiffs' counsel conceded the reasonableness of this approach at the August 2 hearing. Taking one-third of the total unallocated hours for May, 1982, plus any specifically allocated to the *Hill* case, Allis-Chalmers' counsel spent the following time preparing for the *Hill* case: Foster 33.25 hours; German .25 hours; Brown 7.58 hours; and Delaney 5.83 hours. A total of 74 hours billed to these cases during May, 1982, was excluded from this computation primarily for the reason that it appeared to be allocable to the *Davidson* case.

5. 
| | | | |
|---|---|---|---|
| Foster | 33.25 hours x $96/hour | = | $3,192 |
| German | .25 hours x $82/hour | = | 20 |
| Brown | 7.58 hours x $67/hour | = | 508 |
| Delaney | 5.83 hours x $34/hour | = | 198 |
| | | | $3,918 |

as shown on Hearing Exhibit A–C VII. Nevertheless, the Court has reviewed the itemized statements which show the work done, the time spent and the hourly rates of the attorneys doing the work. Based on the experience and ability of counsel, and the result obtained, the Court finds that the hours expended in trial were reasonably expended and the customary hourly rates charged were reasonable. The reasonably expended time multiplied by the reasonable hourly rates equals $3,108.

Allis-Chalmers' counsel were completely successful in defending their client against Hill's claims. The legal and factual questions in this action were not particularly difficult and could not be characterized as novel. The skill required to perform these legal services properly is no greater than that required for most cases. The fee was fixed rather than contingent. The Court is unaware of any particularly undesirable aspect of the case. Therefore, the $7,026 in attorney's fee incurred by Allis-Chalmers in post-discovery trial preparation and in trial will not be enhanced. Interest has not been requested, and it will not be allowed.

In allocating the assessment of this attorneys' fee between plaintiff and her counsel, the Court considered the relative conduct of the plaintiff and plaintiff's counsel, and any responsibility that plaintiff may be assigned for the conduct of her counsel. Hill selected her attorneys to represent her in this action. Hill either chose to pursue this case after having been advised by counsel that it was groundless or her counsel failed to advise her that it was groundless and pushed irresponsibly ahead. Also, Hill varied her testimony in significant aspects from one time to another, which must have posed grave difficulties for her counsel in preparing and presenting her case. Therefore, Hill is either directly responsible for the decision which led to pursuing this claim after the close of discovery or she is responsible for her attorneys' actions within the scope of their authority.

[A] rule relieving Title VII plaintiffs of responsibility for actions their attorneys take in their behalf would in many instances disserve the purpose of § 706(k) to protect employers from burdensome litigation having no legal or factual basis. In virtually all actions without legal basis, and in many actions without factual basis, it will be the plaintiff's attorney who should first recognize the insufficiency of his case. Similarly, when a plaintiff continues to litigate after it becomes clear that his claim is frivolous, unreasonable, or groundless, it will usually be his attorney who, through discovery or attention to the developing case law, should first recognize the necessity to discontinue the litigation. If plaintiffs in such cases were permitted to escape liability under § 706(k), the salutary effect of that provision would be diluted. Finally, in many cases, including this one, in which the plaintiff's counsel may appear to be primarily culpable, the plaintiff may find relief from the effect of our rule in the form of a malpractice action. We hold, then, that the perception that counsel was primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case.

*Durrett v. Jenkins Brickyard,* 678 F.2d 911, 916 (11th Cir.1982).

Counsel had the responsibility to assess the facts in light of the easily discernible legal standards for determining unlawful discrimination. Counsel presumably have been trained to make this legal analysis and to reach an unemotional, rational conclusion about the merits of plaintiff's claims. After so doing if there was no reasonable basis for believing that Hill was unlawfully discriminated against, counsel should have used their best efforts to convince Hill to conclude this case on the most favorable basis possible. If these efforts were unsuccessful, counsel should have considered whether to continue as plaintiff's counsel.[6]

---

**6.** Missouri Disciplinary Rule DR2–110(B) provides that an attorney shall withdraw from employment under the following circumstances:

If no effort is made to withdraw and meritless claims are pursued blindly through the judicial system, counsel must share the responsibility and the consequences. Counsel cannot escape liability, as they attempt to here, by relying solely on their belief that their clients genuinely feel that they were not fairly treated. The judicial system cannot guarantee everybody who wants it their day in court to litigate frivolous claims while litigants with legitimate claims wait for redress.

Therefore, one-half the attorney's fees reasonably incurred by Allis-Chalmers in post-discovery pretrial preparation and in the *Hill* trial, $3,513, will be assessed against Hill's counsel jointly and severally. Plaintiff Hill has filed a financial statement which shows that her financial resources (income and assets) are limited. Plaintiff's inability to pay is a proper limiting factor on the amount of attorney's fees assessed. *Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025 (2d Cir.1979), and *Durrett,* 678 F.2d at 917.

At the same time, we hold that in no case may the district court refuse altogether to award attorney's fees to a prevailing Title VII defendant because of the plaintiff's financial condition. A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence. In this case, the district court erred by finding Durrett's apparent indigency justification for assessing no fee. On remand, Durrett's indigency, if established, will limit, but not eliminate, the award. *Durrett,* 678 F.2d at 917.

In light of Hill's financial condition as shown by her financial statement, an assessment of $1,000 against her will reasonably accomplish the deterrent purposes of such an award and will serve to redress the wrong done without subjecting Hill to financial ruin. *Faraci,* 607 F.2d at 1029 and *Durrett,* 678 F.2d at 917.

### Defendant Unions' Requests for Award of Attorneys' Fees

#### Davidson

Davidson testified that he complained about the discriminatory selection of lead men in a strategy session before an arbitration hearing on his challenge to discipline assessed for cursing his supervisor. A representative of the international union advised against raising these allegations before the arbitrator because he believed it would obscure the dispute being arbitrated. Davidson made no effort to show that this

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule....

DR7–102(A) provides in part:

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

Permissive withdrawal from employment is authorized by DR2–110(C) in part as follows:

If DR2–110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) His client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal, of existing law.

The Court is aware of the problems for counsel and the Court presented by a motion to withdraw. Procedures which safeguard various interests have been developed for requests to withdraw by appointed counsel in criminal appeals, *Anders v. State of California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and certainly can be developed in this type of case.

strategy decision was based on racial considerations. Also, there was no effort made to show that in giving the advice to Davidson the union representative treated him any differently from white grievants.

This incident was the only evidence offered by Davidson which pertained to the international union. It furnished no reasonable basis for an inference of racial discrimination. The claim against the international was meritless.

Davidson argued that the failure of the local union to pursue his complaint(s) that he was being denied lead man positions because of his race meant that the union was discriminating against Davidson because of his race. Apparently, plaintiff's counsel believed that unlawful racial discrimination was shown by the local union's failure to grieve automatically every complaint by a black employee or to grieve automatically every complaint alleging racial discrimination. When asked to provide the Court with some authority supporting their theory, plaintiff's counsel were unable to do so. Counsel should not be penalized for asserting a novel theory. The novelty of a theory may reflect the diligence and creativity of counsel. Here, however, the theory was utterly devoid of a legal basis which indicates rash prosecution not creativity.

At the hearing on August 2, 1982, more than a month *after* trial, plaintiff's counsel abandoned their theory. They conceded that the local union was obligated to process the complaints of black employees alleging differential treatment because of race in the same manner that the union would process other complaints. Counsel finally appeared to recognize that the real issue was whether plaintiffs' complaints were treated differently by the local union *because of plaintiffs' race.*

Although plaintiff cannot be expected to possess legal sophistication, his attorneys are expected to know the requirements of proving a violation of Title VII or § 1981. At least by the time discovery was completed counsel should have recognized that there was no evidence tending to support Davidson's racial discrimination claims against the unions. It is only through heedless disregard for the elements of statutorily-prohibited discrimination and the requirements of proof that Davidson and his counsel could have allowed the claims against the unions to proceed through trial.

The evidence presented by plaintiff did not even support plaintiff's ill-conceived legal theory. Assuming that Davidson complained to his union, there was *no* evidence from which the inference could be drawn that Davidson complained at a time which would permit the union to file a timely grievance under the contract. Furthermore, there was *no* evidence from which it could be inferred that the union's inaction was not based on a good faith assessment that no racial discrimination existed.

Most importantly, if the correct legal standard is used, there was *no* evidence that the union failed to pursue Davidson's complaints *because* of his race. There was no evidence even tending to support a reasonable inference of different treatment *because* of Davidson's race.

Furthermore, counsel's pretrial conduct unreasonably and vexatiously multiplied the proceedings. For instance, counsel steadfastly refused to divulge the factual basis for Davidson's claims against the unions. Counsel opposed the unions' motion for summary judgment by assuring the Court that Davidson had a factual basis for his claims and that counsel shared their client's belief that he had been discriminated against. Relying on counsel's assurances of a factual basis for Davidson's claims against the unions, and assuming that counsel understood the well-defined proof requirements in cases of this type, the Court overruled the motion for summary judgment.

At a pretrial conference on the eve of trial, the unions' attorney stated that he still had not been told the factual basis for Davidson's discriminatory treatment claim. The Court requested plaintiff's counsel to summarize the facts on which Davidson relied. Plaintiff's counsel stated that he

could not do so, but that he could call his client and ask him to come to the conference for that purpose. Counsel assured the Court again that the factual basis was there but the details escaped him. Counsel's ignorance of the factual basis for his client's claim after the close of discovery, after resisting motions for summary judgment, and shortly before the commencement of trial indicated a serious deficiency in counsel's performance. Nevertheless, assuming again that counsel's assurances were based on a basic understanding of the proof requirements in cases of this type, the Court relied on counsel's representations and the claims against the unions went to trial.

After carefully considering the glaring deficiencies in Davidson's evidence against the unions, the conclusion is inescapable that Davidson continued to litigate his claims against the unions after a reasonable person would have seen clearly that they were groundless. By assisting him in so doing, Davidson's counsel unreasonably and vexatiously multiplied the proceedings and their actions were tantamount to bad faith. Davidson and his counsel wilfully abused the judicial processes. Therefore, an award of reasonable attorney fees for trial and post-discovery trial preparation will be assessed against Davidson and his counsel.

Again, the amount of the fee will be calculated in accordance with the guidelines in *Hensley*. Sixty-one hours [7] were reasonably spent during May, 1982, by the unions' counsel in post-discovery pretrial preparation of *Davidson*. Eighty-eight hours [8] were reasonably spent in trial. A total of 149 hours were spent in post-discovery pretrial preparation and in trial. Considering the experience and ability of counsel, the Court finds that counsel's normal hourly charge of fifty dollars is a very reasonable rate. The reasonably expended time multi-

plied by the reasonable hourly rate equals $7,450. For the same reasons stated in connection with Allis-Chalmers' request for an award of attorney's fees, the minimum total will not be adjusted upward.

In allocating responsibility between plaintiff and his counsel, the Court has considered the relative culpability of the plaintiff and his counsel as well as the responsibility of plaintiff for his attorneys' conduct.

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer,* 101 U.S. 320, 25 L.Ed. 955 (1879)).

For the reasons already discussed, the Court finds that counsel and Davidson are equally culpable. Thus $3,725 will be assessed against Davidson's counsel jointly and severally. Taking into consideration Davidson's financial condition as reflected in his financial statement filed on August 4, 1982, the Court will reduce to $1,500 the portion assessed against him. The assessment of that amount against Davidson will accomplish the deterrent purposes of such an award and will serve to redress the wrong done without subjecting him to financial ruin.

---

**7.** Thirty-three hours were spent by the unions' attorneys in post-discovery pretrial preparation for *Davidson* plus one-third of the eighty-four hours incurred generally in final pretrial preparation of all three cases (33 + 28 = 61). Plaintiffs' counsel agreed at the hearing that time spent in general preparation of all three cases should be equally divided among the plaintiffs.

**8.** Eighty-five hours were spent by the unions' attorneys in the *Davidson* trial plus one-third of the nine hours incurred generally in defense of all three cases (85 + 3 = 88).

*Hill*

With regard to the unions' request for fees incurred in the preparation of their defense against Hill's claim, the threshold question is whether the dismissal of her claims against the unions immediately before trial prevents the unions from being prevailing parties within the meaning of the statutes authorizing attorney's fee awards. The Fifth Circuit Court of Appeals has squarely faced this question.

> Although there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata.* As such, the hospital has clearly prevailed in this litigation.

*Anthony v. Marion County General Hospital,* 617 F.2d 1164, 1169–70 (5th Cir.1980). This Court agrees with the Fifth Circuit's reasoning; the unions are prevailing parties.

Because Hill's claims against the unions were dismissed before trial, the factual basis for Hill's claims is unclear. The Court has examined the findings of fact and conclusions of law proposed by Hill's counsel prior to trial (Document # 59, filed May 25, 1982), and the issues of fact and law described in the agreed-upon Standard Pretrial Order No. 2 (Document # 66, May 19, 1982). Proposed Finding of Fact No. 25 asserts that the local union:

> Discriminated against Betty J. Hill intentionally and because of her race by not fulfilling its fiduciary and contractual obligation to represent Betty J. Hill properly in her job assignment and termination grievances based on discrimination, while more properly representing white employees.

Based on the complete failure of proof by the other plaintiffs in their claims against the local union, the Court doubts that Hill had any evidence to support this proposed finding. However, without a factual record, the benefit of the doubt must be accorded Hill. Therefore, the Court, based on the record, cannot conclude that Hill's claim against the local union was meritless.

Hill's claims against the international union were not based on any directly discriminatory treatment but on derivative responsibility for the actions of the local union. Paragraphs 4 and 27, Betty Hill's Proposed Findings of Fact and paragraph 3, Proposed Conclusions of Law filed May 25, 1982 (Document No. 59) stated:

> 4. That at all times relevant herein Betty J. Hill was a member of the Local 1958 and United Steelworkers of America International Union.

> 27. That the International Union creates and controls the means and metholds [sic] by which the Local Union operates in its daily business as it effects the employees of Allis-Chalmers.

> 3. That the International Union is deriviatively liable for the acts of discriminating against Betty J. Hill, as principal of the Local Union agent.

Although the Court seriously doubts that plaintiff Hill had any basis whatsoever for establishing discriminatory intent by the international union,[9] the inadequately developed record prevents the Court from concluding that Hill's claim against the international was meritless.

Therefore, the unions' requests for the award of attorney's fees against Hill and her counsel will be denied.

*Miller*

Like Davidson, Miller failed to present any evidence from which the Court could conclude reasonably that the unions discriminated on an impermissible basis. Miller's theory was that the local union ignored her complaints about the treatment being afforded by the company. Because Miller was black and because the union did not act on her complaints she contended that she

---

9. In *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Court suggests that acquiescence in racially discriminatory conduct is not "the equivalent of discriminatory intent." *Id.* at 292 n. 23, 102 S.Ct. at 1792 n. 23.

was discriminated against because of her race.

Miller offered no evidence that the unions acted automatically on all white employees' complaints. It was stipulated that the union pursued through arbitration grievances on behalf of black employees. Therefore, even if Miller had established that the union failed to grieve Miller's complaints, no inference of discrimination arose from simple inaction.

Furthermore, even under Miller's version she made only two complaints to the union from July, 1979, to August, 1980. Significantly, they were not requests for action but rather inquiries for information to which the union replied. On one occasion the union relayed the inquiry to Miller's foreman who explained to Miller why she was being moved from job to job. Miller told her foreman that she did not want to file a grievance.

■ Miller's evidence established that the union assisted her in getting Allis-Chalmers both to reinstate her and to accommodate her physical restrictions. After being reinstated she never told any union representative who was aware of the reinstatement agreement that Allis-Chalmers was breaching the agreement. The claim against the international union was based solely on the dubious legal theory that the international was responsible for the acts of the local.[9]

In this Court's opinion, it is only through heedless disregard of the proof requirements for establishing statutorily prohibited discrimination that counsel could have participated in litigating Miller's claims against the unions through trial. Again, there is a complete lack of proof that Miller was treated differently because of her race. It is noteworthy that counsel in the *Miller* case, the third case to be tried, demonstrated no greater awareness of the proof requirements in this type of case than was

evident in the first case tried. For the same reasons stated in connection with the discussion of Davidson's claims against the unions, an award of reasonable attorney's fees for trial and trial preparation will be assessed against Miller and her counsel.

Forty-seven hours[10] were reasonably spent in May, 1982, by the unions' counsel and 63 hours[11] were reasonably spent in June, 1982, in post-discovery pretrial preparation and in the *Miller* trial. As previously discussed, an hourly rate of fifty dollars is reasonable. The reasonably expended time multiplied by the reasonable hourly rate equals $5,500. For the reasons stated previously this amount will not be enhanced.

■ Miller and her counsel must share equally the responsibility for pursuing her claims against the unions after the close of discovery. Thus one-half of the unions' attorney's fees ($2,750) will be assessed against Miller's counsel jointly and severally. Taking into consideration Miller's financial condition as reflected in her financial statement, the Court will reduce her portion of the award to $550 which will accomplish the deterrent purpose of such an award and will serve to redress the wrong without subjecting the plaintiff to financial ruin.

### Award of Fees for Reopened Discovery

On January 4, 1982, plaintiffs filed a motion requesting leave to file their third amended complaint. Plaintiffs Hill and Davidson sought to add claims for mental anguish and emotional distress against both Allis-Chalmers and the unions. Defendants vigorously opposed the request to amend arguing that the case had been on file for over two years, plaintiffs' depositions had been taken, the trial was scheduled to begin in a few months, and plaintiffs should have advanced these damage claims earlier.

---

**10.** Nineteen hours were incurred in post-discovery pretrial preparation for *Miller* plus one-third of the eighty-four hours incurred generally in final pretrial preparation of all three cases (19 + 28 = 47).

**11.** Sixty hours were spent in the *Miller* trial plus one-third of the nine hours incurred generally in defense of all three cases (60 + 3 = 63).

On February 17, 1982, the Court conditionally granted plaintiffs' third request to amend their complaint.

Because of plaintiffs' failure to cure any deficiencies in previous pleadings, failure to expeditiously conclude discovery (document inspection in particular), and failure to incorporate in previous complaints the proposed new theories of damages, which the Court may fairly infer were known to plaintiffs before the present motion was filed, the Court finds that leave should not be granted for those amendments opposed by defendants unless the plaintiffs agree to payment of costs.

It is further ORDERED that plaintiffs show cause in writing within ten (10) days from the date of this order why the party seeking to amend should not bear the reasonable, substantiated costs of any additional discovery necessitated by their proposed amendments.

Order Granting in Part Plaintiffs' Motion for Leave to Amend Complaint and Requiring Plaintiff to Show Cause Why Conditions Should Not Be Imposed On Additional Amendments dated February 17, 1982.

On February 26, 1982, plaintiffs replied to the February 17, 1982, Order as follows:

Plaintiffs' Hill and Davidson agree the additional costs of that discovery should be borne by them.

Plaintiff Miller should not be required to pay the additional cost of discovery concerning her mental anguish in light of her allegations that the Defendants' actions toward [sic] were malicious and intentional.

After a telephone conference was held with counsel, the Court ordered on March 31, 1982, that

Plaintiffs' motion for leave to amend their complaint to add allegations of emotional distress has been granted on the condition that plaintiffs Davidson and Hill bear the costs of reopening discovery for the limited purpose of inquiring into the issue of emotional distress. Plaintiff Miller will not be required to bear such costs.

 Plaintiffs Hill and Davidson now argue that they should not be assessed any attorney's fees as part of the costs which they agreed to pay. Their arguments, including the oral statements by plaintiffs' counsel at the August 2 hearing, do not convince the Court that Hill and Davidson should be relieved of their agreement. To assume that the Court did not intend that attorney's fees be included in the term "costs" as used in its order of March 31, 1982, is not reasonable. During the telephone conference, plaintiffs' liability for attorney's fees was discussed. Also, the whole purpose of requiring plaintiffs to pay the costs was to insulate defendants from the expense of the late amendment.

Allis-Chalmers' attorneys reasonably spent 7.25 hours preparing for and taking Davidson's and his doctor's depositions.[12] The reasonably expended time multiplied by the hourly rate previously found reasonable, equals $652.50. In addition, Allis-Chalmers reasonably spent $109.50 for transcripts of the two depositions. Therefore, $762 in costs incurred by Allis-Chalmers in reopening discovery will be assessed against Davidson.

Allis-Chalmers' attorneys reasonably spent 3.75 hours in preparing for and taking Hill's deposition. The reasonably expended time multiplied by the hourly rate previously found reasonable, equals $316.50.[13] Allis-Chalmers reasonably spent $24.40 for a

---

**12.** Allis-Chalmers' counsel spent 3.75 hours preparing for and taking Davidson's deposition and 3.5 hours preparing for and taking his doctor's deposition. See Hearing Exhibit A–C I. The somewhat higher figure shown on Hearing Exhibit A–C VIII apparently result from an uneven allocation of the total time spent between the three plaintiffs. The basis for that allocation is not shown.

**13.** If the total time spent in preparing for these depositions (Hearing Exhibit A–C I) is divided into thirds, one-third is somewhat higher than the figure shown on Hearing Exhibit A–C VIII. No basis is shown in the record for other than an equal division of the total time.

transcript of the Hill deposition. Therefore, $340.90 in costs incurred in reopening discovery will be assessed against Hill.

The unions' attorneys reasonably spent 8.75 hours in preparing for and taking Davidson's and his doctor's depositions. The reasonably expended time multiplied by the hourly rate previously found reasonable [14] equals $437.50.

The unions' attorneys reasonably spent 2 hours in preparing for and taking Hill's and her doctor's depositions. The reasonably expended time multiplied by the hourly rate previously found reasonable equals $100.

### Orders

It is therefore ORDERED that

1) The motion of Allis-Chalmers for an award of attorney's fees incurred in defending against Davidson's claim and Miller's claim is denied.

2) Allis-Chalmers' request for an award of attorney's fees incurred in defending against Hill's claim is granted. Defendant Allis-Chalmers is granted judgment against plaintiff Hill in the amount of $1,000 and against her counsel jointly and severally in the amount of $3,513 for reasonable attorneys' fees incurred during post-discovery pretrial preparation and the trial.

3) The unions' request for an award of attorney's fees incurred in defending against Davidson's claim is granted. The defendant unions are jointly granted judgment against plaintiff Davidson in the amount of $1,500 and against his counsel jointly and severally in the amount of $3,725.

4) The unions' request for an award of attorney's fees incurred in defending against Hill's claim is denied.

5) The unions' request for an award of fees incurred in defending against Miller's claim is granted. Defendant unions are jointly granted judgment against plaintiff Miller in the amount of $550 and against her counsel jointly and severally in the amount of $2,750.[15]

6) Defendant Allis-Chalmers is granted judgment against Davidson in the amount of $762 and against Hill in the amount of $340.90 and the defendant unions are granted judgment against Davidson in the amount of $437.50 and against Hill in the amount of $100 for attorney's fees and expenses reasonably incurred in reopening discovery.

7) The costs of each of these actions are awarded to defendants.

---

**14.** The Court agrees with the unions' counsel's comments in his letter of April 12, 1982, to plaintiffs' counsel that $50 per hour is unreasonably low for an attorney with his expertise. Nevertheless, $50 per hour is the amount used in billing the unions and has been used throughout this opinion.

**15.** The total fees incurred by the unions in defending these cases were: *Davidson*—$19,639.89; *Hill*—$11,856.19; and *Miller*—$13,918.49, totaling $45,414.57. Hearing Exhibit U–III. The total fees awarded herein are $6,475 against counsel and $2,050 against the parties totaling $8,525 or only 18.77% of the total attorney's fees incurred by the unions.