**In re Henry M. BROWN, Debtor.**

**James BALDRIDGE d/b/a Baldridge Realty, Plaintiff,**

v.

**RICHARD L. SMITH, P.A. and Fredrick S. Wetzel, III, Defendants.**

**Bankruptcy No. LR 83–738 S. Adv. No. 86–571.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Oct. 31, 1986.

---

Raymond Harrill, Mark Riable, Little Rock, Ark., for plaintiff.

James Beachboard, Daniel R. Carter, Little Rock, Ark., for Fredrick Wetzel, III.

James Glover, Little Rock, Ark., for Richard L. Smith, P.A.

Richard L. Smith, Little Rock, Ark., trustee.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S COMPLAINT FOR RELIEF EXCEPT WITH RESPECT TO RETURN OF EARNEST MONEY PAYMENT OF $5,180.00 PLUS INTEREST AT THE LEGAL RATE TO PLAINTIFF AND FINAL JUDGMENT ACCORDINGLY FOR DEFENDANTS ON PLAINTIFF'S CLAIM FOR RELIEF EXCEPT THAT PLAINTIFF SHALL HAVE RECOVERY FROM DEFENDANTS OF THE EARNEST MONEY PAYMENT OF $5,180.00 FROM DEFENDANTS PLUS INTEREST

DENNIS J. STEWART, Chief Judge.

This action was commenced by the plaintiff in the Circuit Court of Pulaski County and removed to the bankruptcy court under the provisions of § 1452, Title 28, United States Code. It is an action to recover an earnest money payment of $5,180.00 and alleged actual damages of $58,100.00, claimed to have been incurred by plaintiff because of the defendants' failure to deliver merchantable title of certain real property according to a contract for purchase and sale entered into by the plaintiff as purchaser and the defendants as seller. On October 30, 1986, the action came on before the bankruptcy court for hearing on the plaintiff's motion for remand to the state court and on the defendants' motion for summary judgment. The parties appeared personally and by counsel. The hearing then held demonstrated the existence of the following uncontradicted, material facts. The defendant Richard L. Smith, P.A., was appointed as the trustee for the within bankruptcy estate of Henry A. Brown. From January 1, 1983, to June 30, 1985, the defendant Wetzel was an employee of Richard L. Smith, P.A. On May 29, 1984, the trustee, pursuant to authorization of the bankruptcy court, conducted an auction sale of the property of the estate. The sale, presided over by auctioneer Vince Marchese, commenced at 10:00 a.m. on that date after a registration hour from 9:00 a.m. to 10:00 a.m. During that period of time, Mr. Marchese's wife registered buyers in her own handwriting. After 10:00 a.m., it would have been necessary for late-arriving buyers to register themselves. Plaintiff was the last of the buyers to be registered in Mrs. Marchese's handwriting. At 10:00 a.m., Mr. Marchese addressed one crowd preliminarily, including a statement that the auction sale was one under bankruptcy court jurisdiction. Plaintiff claims that he did not arrive at the sale until after Marchese's disclosure of the fact that the auction was a bankruptcy sale. He then successfully bid on some 56 or 58 acres of real property for a sale price of $25,900.00. The written contracts for the purchase and sale of the property were entered into on May 24, 1984, signed by plaintiff and by

"R.L. Smith, trustee, by Fredrick S. Wetzel, partner". Mr. Wetzel admittedly was not a partner, but unquestionably had authority to sign the contracts for the trustee. They provided for $5,180.00 down and the balance of the purchase price on closing in approximately 4 weeks. They also provided that:

"Seller shall furnish, at Seller's cost, a complete abstract reflecting merchantable title satisfactory to Buyer's attorney; however, Seller shall have an option to furnish Buyer, in place of abstract, a policy of title insurance in the amount of the purchase price, and submission of an abstract shall not constitute a waiver of this option. If objections are made to title, Seller shall have a reasonable time to meet the objections or to furnish title insurance."

The following provision concerning "earnest money" is also contained in the contracts:

"If title requirements are not fulfilled, it shall be promptly refunded by Buyer. If Buyer fails to fulfill his obligations, the earnest money shall become liquidated damages, WHICH FACT SHALL NOT PRECLUDE SELLER OR AGENT FROM ASSERTING OTHER LEGAL OR EQUITABLE RIGHTS WHICH THEY MAY HAVE BECAUSE OF SUCH BREACH."

Although the plaintiff contends that he did not know that the sale was a bankruptcy sale at the time he subscribed the contracts, he admits that he was told that it was such a sale "immediately" thereafter. The trustee then attempted to deliver merchantable title to the plaintiff. In so attempting, the trustee discovered that there was a cloud on the title to the property which was caused by an ambiguity on the original grantor's deed to the property (in favor of the trustee's predecessor in interest) in respect of whether he was retaining 1 acre or 2 acres. The trustee initially attempted to resolve this cloud on the title by having the original grantor issue a quitclaim deed in favor of the trustee. The original grantor, after sometime had been consumed in this process of entreaty, refused to do so. The trustee then attempted to elect the option provided by the contract to provide title insurance. Again, the project consumed some considerable period of time. And again, the trustee's attempts were frustrated. When the title insurance company issued its policy, it excepted from coverage the claims of the original grantor. The plaintiff found this to be unsatisfactory and refused to accept it in lieu of what he regarded as merchantable title. In the meantime, however, according to his testimony, he had an opportunity to sell the property to a potential purchaser, one John D. Crockett, for a purchase price of $56,500.00. But, because the cloud on the title had not been resolved, he could not buy it. The plaintiff prays for damages of $58,100.00, which he contends to be the difference between the $25,900.00 purchase price which he contracted for and the current market value of the property, $1,500.00 per acre. The trustee stands ready, willing and able to refund the earnest money payment of $5,180.00, plus interest, or to convey the property to the plaintiff, as is, with the existing cloud on the title which he has not yet been able to remove. Further, it is his intention to continue to attempt to remove the cloud on the title.

### The Motion to Remand or to Abstain

■ Plaintiff contends that the action at bar is wholly without the "core" jurisdiction of the bankruptcy court; that it is an action on contract arising exclusively under state law within the meaning of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); and that it should therefore be remanded to the state court from whence the defendants have removed it. The bankruptcy courts, however, have traditionally had "summary" jurisdiction—the historical antecedent of "core" jurisdiction—to determine controversies based upon contracts for the sale of property of the bankruptcy estate. "A court of bankruptcy has summary power over a delinquent purchaser at a sale in bankruptcy proceedings .... [or to] require the return

of the consideration paid by the purchaser for the property." 4B *Collier on Bankruptcy* ¶ 70.98, pp. 1202, 1206, n. 21 (14th ed. 1978). A power so necessary and intimate to the process of estate administration can only be regarded, under the modern Bankruptcy Code, to be among those specifically enumerated powers regarded as "core" jurisdictional powers enumerated under § 157(b), Title 28, United States Code. There can be little honest doubt of the existence of the bankruptcy court's core jurisdiction.

■ Alternatively, plaintiff contends that the bankruptcy court should abstain from this action. But any duty of mandatory abstention which a district court might have under § 1334(c)(2), Title 28, United States Code, cannot be said to apply to the bankruptcy court in adjudicating a "core" proceeding. See *Matter of Burstein-Applebee Co.*, 63 B.R. 1011 (Bkrtcy.W.D.Mo. 1986). Nor is permissive abstention applicable. In fact, when the trustee is still attempting to administer this case, the bankruptcy court would be obliged to restrain and enjoin any state court action against him on the grounds that it is an embarrassment to the administration of the estate. See *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 399, 402 (9th Cir.1970). ("If a plaintiff [is] at liberty to sue the receiver in any competent court without leave, so [is] the appointing court at liberty to use its injunctive powers to protect the receiver ... [when] prosecution of the action would embarrass the administration of the debtor's estate"); *Matter of Burstein-Applebee, Inc., supra*. The bankruptcy courts could not be expected to stand by and permit trustees to be harassed in the performance of their duties by suits of the type of that at bar. If so, trustees could only undertake administration of estates at great and unnecessary risks to themselves.

*The Motion for Summary Judgment*

■ The applicable law makes it clear that the defendants' motion for summary judgment must be granted with respect to the plaintiff's claim for all damages except

return of the earnest money payment. It is a standard and well established legal proposition that, in the absence of warranties in the trustee's *deed* itself, a purchaser from the trustee in bankruptcy is entitled to absolutely no warranties. "In the absence of specific warranty clauses the bankruptcy sale is governed by the rule '*Caveat emptor*.' It is for the purchaser to examine in time what is sold and under what conditions. He may not after discovery of a defect covered by the '*caveat emptor*' principle refuse payment of the purchase price or claim abatement." 4B *Collier on Bankruptcy* ¶ 70.98, pp. 1201, 1202 (14th ed. 1978). Accordingly, the purchaser is "chargeable with actual as well as constructive notice" of undisclosed defects in that which he is sold. *Id.*, n. 15a. A trustee can sell only such title as he has, and—unless he specifically purports to sell more—he is not liable for being unable to convey more than was his in the first instance. It would be an undue burden on estate administration—as it has proven in the case at bar—to require the trustee to remedy those defects in title which are beyond his power to correct. The rule contended to be applicable by plaintiff would make estate administration unduly burdensome, expensive and risky to the trustees' own personal finances.

■ And these rules are especially applicable in the action at bar, in which the trustee stands ready, willing and able to transfer the property to plaintiff, which—even with the unanticipated cloud on the title—is still worth much more, according to the plaintiff's own contentions—than the $25,900.00 which he has agreed to pay the trustee for it.

The plaintiff, however, contends that he is not subject to the foregoing principles of *caveat emptor* because, at the moment he signed the contract, he did not know that he was agreeing to make a purchase from a bankruptcy trustee. For the purpose of ruling on the motion for summary judgment, this contention must be accepted as true. The applicable law, however, holds that actual knowledge of the applicability

of bankruptcy rules and governance is immaterial. "The purchaser at a trustee's sale is bound at his peril to know whether or not the bankruptcy court is proceeding within its jurisdiction in making a sale to him." 4B *Collier on Bankruptcy* ¶ 70.98, p. 1201, n. 15 (14th ed. 1978). "It must be remembered that the doctrine of *caveat emptor* applies in all its force to judicial sales and that it will be *conclusively* presumed that the purchaser agrees to take the title such as it is ..." *Id.* (Emphasis added.) This contention of the plaintiff must therefore be rejected.

Even if actual knowledge of the fact that the sale was a bankruptcy sale were required, however, plaintiff still could not recover any damages for the alleged lost opportunity to sell the property to Mr. Crockett for the sum of $56,500.00. For it is undisputed that, at the time the opportunity to sell to Mr. Crockett arose, he knew that the sale was a bankruptcy sale and therefore should have known that the rule of *caveat emptor* applied and that the trustee had no duty to cure the title defect.

Finally, even under the contracts, standing alone without the principles applicable because the seller was a bankruptcy trustee, the plaintiff, according to the applicable letter quoted above, would be entitled only to the liquidated damages which the defendants in this case have freely offered him in the form of the return of the earnest money payment. Even if it could be shown that the existing cloud on the title reduced the value of the subject real property to zero, and that defendants were responsible therefor (which, for the foregoing reasons, they cannot be) plaintiff does not and could not demonstrate any damages beyond the earnest money deposit. For the defendants remain willing to sell property to him that he contends in the state court complaint to be worth more than his purchase price. But even if it were worth less, the defendants, under the foregoing well-established principles—so fundamental and so necessary to estate administration—would not be liable. The plaintiff is blameworthy for declining the offer of the return of the earnest money deposit and carrying on

with this action. Cf. *Davidson v. Allis Chalmers, Inc.,* 567 F.Supp. 1532 (W.D.Mo. 1983).

Accordingly, for the foregoing reasons, it is hereby

ORDERED that plaintiff's motion to remand this action to a state court be, and it is hereby, denied. It is further

ORDERED that the defendants' motion for summary judgment be, and it is hereby, granted. And it is further, accordingly,

ADJUDGED that judgment be, and it is hereby, entered for defendants on plaintiff's claim for relief except with respect to the $5,180.00 earnest money payment which, plus interest at the legal rate from May 24, 1984, defendants are hereby directed to repay to plaintiff.