16 F.3d 1485
 28 Fed.R.Serv.3d 88
 KIRK CAPITAL CORPORATION, Lary R. Kirchenbauer, Plaintiffs,
The Wallach Law Firm, Appellant,
v.
Wendell BAILEY; Jane Bierdeman-Fike; Gail L. Chatfield;
Thomas Hodges; Ronald Larkin; James R. Moody; John
Russell; Duane Benton; Jerry Hunter; John Scott; Chris
Graham; H. Lee Capps; Joseph Dietrich; Board of Trustees,
of the Missouri State Employees Retirement System, Appellees,
KIRK CAPITAL CORP., a Missouri Corporation; Lary R.
Kirchenbauer, Appellants,
v.
Wendell BAILEY; Jane Bierdeman-Fike; Gail L. Chatfield;
Thomas Hodges; Ronald Larkin; James Moody; John Russell;
Duane Benton; Jerry Hunter; John Scott; Chris Graham; H.
Lee Capps; Joseph Dietrich; Board of Trustees, of the
Missouri State Employees Retirement System, Appellees.
 Nos. 93-2379, 93-2480.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1994.
Decided Feb. 23, 1994.
 
 1
 Counsel who presented argument on behalf of the appellant was Robert John Willl of St. Louis, Missouri. Appearing on the brief were Barry A. Short and Yvette M. Guerra.
 
 
 2
 Counsel who presented argument on behalf of the appellee was Allen D. Allred of St. Louis, Missouri. Appearing on the brief were James W. Erwin and Patricia L. Cohen.
 
 
 3
 Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge and EISELE,* Senior District Judge.
 
 
 4
 EISELE, Senior District Judge.
 
 
 5
 This is an appeal from an order imposing monetary sanctions under Federal Rule of Civil Procedure 11 against the Wallach Law Firm and its client Mr. Lary R. Kirchenbauer.
 
 
 6
 The Kirk Capital Corporation and Mr. Kirchenbauer filed a Complaint against the trustees for the Missouri State Employees' Retirement System ("MOSERS") on April 12, 1991. In the two count Complaint they sought monetary damages under 42 U.S.C. Sec. 1983 against the trustees of MOSERS, both in their official and in their individual capacities. The Complaint alleged a scheme by MOSERS to remove the plaintiffs from their positions as general partners in certain limited partnerships in which MOSERS was required under state law to participate. The Complaint alleged that the MOSERS' actions, done under color of state law, constituted a conspiracy to deprive the plaintiffs of certain constitutionally protected property rights of the plaintiffs in the various limited partnerships.
 
 
 7
 The defendants filed a Motion to Dismiss on June 17, 1991, seeking dismissal of the action because: the plaintiffs failed to allege a deprivation of a constitutionally protected property interest; the defendant trustees were immune from such a suit; and the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) barred the suit because of then pending state court proceedings.
 
 
 8
 On July 25, 1993, prior to the time they were required to respond to the motion to dismiss, the plaintiffs voluntarily dismissed their Complaint without prejudice under Federal Rules of Civil Procedure 41(a).
 
 
 9
 On July 31, 1991, the defendants filed a motion for sanctions under Rule 11, asserting that the complaint was not well grounded in law and was filed for an improper purpose. A year later a hearing was held on the Motion for Sanctions at the conclusion of which the court found a Rule 11 violation but concluded that it needed additional information in order to determine "who the sanctions should be imposed against and in what amount." (Tr. at 67) It ordered additional briefing upon the issue of the reasonableness of the defendants' claim for attorneys fees. The Wallach Law Firm filed a brief opposing generally any monetary sanctions and, alternatively, suggesting a minimal monetary sanction.
 
 
 10
 On April 19, 1993, the district court entered an Order finding that the fee claim was based upon a reasonable hourly rate but was excessive in the number of hours claimed. The defendants sought $38,597 in attorneys fees and cost for the violation of Rule 11. This included $5,887.31 incurred in prosecuting the Rule 11 motion. Defense counsel stated that they had spent 279.10 hours on this case and they claimed an hourly rate of $132.00. In addition they sought reimbursement of expenses totaling $1,571. The trial court reduced the hours claimed from 279.10 to 179.10. The total sanction was $23,641.20 in attorneys fees plus $1,571 in expenses for a total sanction of $25,212.20. The court decided to apportion this sanction with 75% going against the Wallach Law Firm and 25% against their client, individual plaintiff Lary R. Kirchenbauer. The court explained:
 
 
 11
 Plaintiff either chose to pursue this case after having been advised by counsel that it was a very long shot, or his attorney failed to advise him of its tenuous character. In the first instance, plaintiff's responsibility for the sanction is clear. In the second, plaintiff must be held responsible for his attorney's actions because plaintiff hired the attorney.
 
 
 12
 For this proposition it relied upon the case of Davidson v. Allis Chalmers Corp., 567 F.Supp. 1532, 1544 (1983). Thus the Wallach Law Firm's share of the sanction was $18,909.15 and Mr. Kirchenbauer's portion came to $6,303.05.
 
 
 13
 The Wallach Law Firm and Mr. Kirchenbauer filed separate appeals. The Wallach Law Firm raises two issues:I. The district court erred and abused its discretion in imposing a monetary sanction against the Wallach Law Firm because a monetary sanction was not the least severe sanction necessary to serve the purpose of Rule 11.
 
 
 14
 II. If a monetary sanction was necessary, the district court erred and abused its discretion in imposing an excessive monetary sanction upon the Wallach Law Firm.
 
 
 15
 Mr. Kirchenbauer, appearing pro-se, relied upon the Wallach brief but also made the following arguments:
 
 
 16
 Argument I. Lary R. Kirchenbauer, as a non-lawyer, cannot reasonably be expected to make complex legal decisions about which trained, experienced lawyers reasonably disagree.
 
 
 17
 Argument II. The district court erred in concluding that an improper purpose was the foundation for the filing of the federal suit.
 
 
 18
 DISCUSSION.
 
 
 19
 Rule 11, as it was in effect at the time of the lower court's decision, read, in pertinent part, as follows:
 
 
 20
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 21
 It is instructive to compare that rule with the new Rule 11 which went into effect on December 1, 1993. The new Rule 11, in pertinent part, reads as follows:
 
 
 22
 (a) SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name ...
 
 
 23
 (b) REPRESENTATIONS TO COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
 
 
 24
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 
 
 25
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 
 
 26
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 
 
 27
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 
 
 28
 (c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.(1) How Initiated.
 
 
 29
 (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
 
 
 30
 (B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why is has not violated subdivision (b) with respect thereto.
 
 
 31
 (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in sub-paragraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
 
 
 32
 (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
 
 
 33
 (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
 
 
 34
 (3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.
 
 
 35
 It appears that if new Rule 11 had been in effect and controlled when the Motion for Sanctions was considered and disposed of by the district court below, we would have to reverse the sanctions imposed here against the law firm and the client. With respect to the client new Rule 11(c)(2)(A) provides:
 
 
 36
 Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
 
 
 37
 There was no argument made in this proceeding that the factual allegations in the Complaint did not have evidentiary support. The Motion to Dismiss assumed the accuracy of the factual allegations but put forth the following legal bars: there was no allegation of the deprivation of a constitutionally protected property right; the defendants are entitled to qualified immunity; and the Younger abstention bar applies. Thus: no "civil rights" Section 1983 cause of action. It is the lawyer, not his or her lay client, who must decide if the claims made are warranted by existing law or by non-frivolous arguments for the extension thereof.
 
 
 38
 Furthermore, both the client and the law firm would be entitled to the "Safe Harbor" provision found in new Rule 11(c)(1)(A). And, since the defendants did not serve their Motion for Sanctions on the plaintiffs, they did not give them the 21 day "grace" period within which to voluntarily dismiss their Complaint. Under the new rule, the Motion for Sanctions could not have been "filed with or presented to the court unless, within 21 days after service of the motion ... the challenged ... claim ... is not withdrawn ..." (Emphasis supplied.) Here the Complaint was voluntarily dismissed by the plaintiffs some 39 days after the Motion to Dismiss was filed, but the defendants did not file their Motion for Sanctions until six days after the plaintiffs had taken a voluntary non-suit. Under the new Rule, defendants would file their Motion to Dismiss and at some time serve (not file) their Motion for Sanctions. Then the plaintiffs would have 21 days to voluntarily withdraw their Complaint if they wished to avail themselves of the "Safe Harbor" provision.
 
 
 39
 And even if defendants had not availed themselves of the Safe Harbor clause, the new Rule would at least require the remand of the issues concerning the sanctions to be imposed against the law firm. Why? Because of the provisions of new Rule 11(c)(2) which requires that sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Here there is no indication in the record that the district court considered any sanction other than monetary ones, and there is no indication that the judge focused on the concern for the possible repetition of the conduct intended to be sanctioned. Indeed, the court's comments about the Wallach firm suggest that it had no such concern.[1] Rather the objective of the sanction appears to have been to make the defendants whole for the expenses they incurred because of the unfounded Complaint. So under the new Rule 11 we would remand so the court could consider the requirements of Subsection c and then comply with new Rule 11(c)(3) by entering an Order "describing the conduct determined to constitute a violation ... and explain the basis of the sanction imposed."
 
 
 40
 Of course, the new Rule 11 was not in effect and did not in any way control the lower court's decision in this case. Here the court was required to apply Rule 11 as it read before December 1, 1993. Nevertheless, the Court finds the above "dicta discussion" of the new Rule useful in introducing the issues in this case.
 
 
 41
 On July 20, 1992, the district court held a hearing on the Motion for Sanctions. After discussing the case and its relation to pending state judicial proceedings, the circumstances surrounding the filing of the Complaint and the baselessness of the legal theories advanced, the court concluded:
 
 
 42
 In any event, for all those reasons and for the reasons stated by the defendants in their briefing in support of the Motion for Sanctions, Rule 11 was violated to the extent that the complaint was not well grounded, in fact, and warranted by existing law or by good faith argument for the extension and modification or reversal of existing law.
 
 
 43
 So we identify the court's view of the Rule 11 violation. However, there really is no basis for the conclusion that the complaint was not well grounded "in fact." So the remaining pertinent conclusion is that the complaint was not "warranted by existing law or by good faith argument for the extension and modification or reversal of existing law." The factual basis for this conclusion is spelled out in the district court's remarks at pp. 63-67 of the Hearing Transcript.
 
 
 44
 On July 21, 1992, the day after the hearing, the district court entered the "Order Finding Violation of Rule 11 and Requiring Affidavits of Fees," the first two paragraphs of which read as follows:
 
 
 45
 For the reasons stated on the record on July 20, 1992, plaintiffs and/or their counsel violated Rule 11, Federal Rules of Civil Procedure, by filing a Complaint that was not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
 
 
 46
 The record does not contain facts sufficient to determine the amount of the sanction to be imposed or the person(s) against whom the sanction will be imposed.
 
 
 47
 So, although the district court worried about the motive of the plaintiffs for filing their federal court complaint, it in the end did not conclude that the complaint was filed for any improper motive such as to "harass" or cause "unnecessary delay" or to needlessly "increase the cost of" the litigation. So were the sanctions imposed for filing a legally baseless complaint lawful and within the lower court's discretion?
 
 
 48
 In Harlyn Sales, et al v. Kemper Financial Services, et al 9 F.3d 1263 (7th Cir.1993) the court upheld the discretion of the district judge not to impose sanctions in a rather close case. The court said:
 
 
 49
 So, while sanctions must be applied in certain situations, when the issue is not free from doubt we should accord great deference to the judgment of the district court.
 
 
 50
 We are convinced that neither the facts nor the law cited by appellants require this court to reverse the decision of the district judge. On the contrary, the record provides ample grounds for the exercise of judicial discretion. (Emphasis supplied.)
 
 
 51
 Id. at 1269.
 
 
 52
 Likewise, here, we are convinced that the record provides an ample basis for the district court to impose sanctions in the exercise of its judicial discretion. So the only real questions remaining are: (1) Should this matter be remanded to the trial court so that it might consider non-monetary sanctions before imposing monetary ones, (2) Was it an "appropriate" sanction under Rule 11 to assess a monetary penalty against the client Mr. Kirchenbauer, and, (3) Assuming the court properly exercised its discretion in deciding to impose monetary sanctions, was the amount assessed reasonable in the light of the Rule 11 violation found.
 
 
 53
 Appellants contend that, at the least, this matter should be remanded to the district court because of its failure to consider possible sanctions other than monetary fee and expense reimbursement.
 
 
 54
 While it is true that courts have broad discretion in determining an appropriate sanction (where some sanction is required under Rule 11), and while appellate courts have forcefully suggested that trial courts consider which sanction "constitutes the least severe sanction that will adequately deter the undesirable conduct," Pope v. Federal Express 974 F.2d 982, 984 (8th Cir.1992), nevertheless old Rule 11 simply requires an "appropriate" sanction and does not mandate that the district court go through such an analysis, overtly or otherwise. This is in contrast with the language of the new Rule. True, the district court has discretion to impose non-monetary sanctions, but it is not required to do so. It is one thing for appellate courts to strongly suggest that the sanction chosen be the least severe necessary to achieve the objective of the sanction. It is quite another to state that they must apply the least severe sanction. This circuit has not taken this second step. It simply requires that the sanction be "appropriate" as required by old Rule 11 thereby according broad discretion to the trial court. We do likewise, and therefore conclude that there is no basis for remanding the case in order to require the lower court to consider any alternative non-monetary sanctions.
 
 
 55
 Was the amount assessed reasonable in the light of the record? The lower court was obviously attempting to fairly compensate defendants for the reasonable attorneys' fees and costs that were occasioned by the filing of the legally frivolous complaint. But the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending. See e.g. White v. General Motors, 908 F.2d 675 (10th Cir.1990).
 
 
 56
 While the lower court accepted, as we do, the reasonableness of defendants' attorney's hourly rate, it felt the hours claimed to be excessive. As a consequence it reduced the number of hours by 100 from 279.10 to 179.10.
 
 
 57
 We are not required to deal with credibility issues in reviewing the reasonableness of the monetary sanctions imposed in this case. Both the trial court and this court bring to the consideration of such issues our own knowledge about the dynamics of the practice of law.
 
 
 58
 On the face of it, there is something very inconsistent with the assertion that the plaintiffs filed a patently frivolous complaint meriting sanctions under Rule 11 and contending that it took 279.10 or even 179.10 hours of legal work in order to reveal what defendants contend is obvious.
 
 
 59
 It is true that the filing of the complaint may have reasonably occasioned other legal work on the case having nothing to do with the motion to dismiss and the motion for sanctions. It may have been reasonable to start work on the merits of the claim on the theory that no one could predict with certainty the outcome of the Motion to Dismiss. But Rule 11 is not a complete substitute for an abuse of process type cause of action. The reasonableness of any front-end fee loading could be an issue in determining all of the damages defendants might have incurred as a result of the filing of the Complaint. But we believe that old Rule 11 sanctions have a more narrow objective. See the analysis in White v. General Motors Corp. supra.
 
 
 60
 While there is always a certain amount of subjectivity in determining the reasonableness of legal fees, and although we do not like to second guess the District Judge, we conclude that the amount awarded here was excessive. Rather than remand the case we will determine the "appropriate" monetary sanction. See Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426-1428 (1st Cir.1992).
 
 
 61
 We conclude that an "appropriate" reasonable attorneys' fee would permit compensation for 50 hours expended in connection with the Motion to Dismiss and 25 hours for prosecuting the Rule 11 motion below or a total of $9,900 in legal fees, plus $1,571.00 for reimbursement of expenses, or a grand total of $11,471.00. The district court below concluded that the appropriate monetary sanction against the Wallach Firm would be three-fourths of the fees and expenses. We adopt that conclusion. Therefore, the total award against the Wallach Firm will be $8,603.25.
 
 
 62
 Will the record in this case permit an affirmance of the monetary sanction against the client, Mr. Kirchenbauer?
 
 
 63
 At the end of the hearing on the Motion For Sanctions, the court concluded that sanctions were required and then identified the "remaining issues" as:
 
 
 64
 First of all, who the sanction should be imposed against and in what amount. (Exhibit 22, App of Appellant, p. 67)
 
 
 65
 Then the court made, inter alia, the following observation:
 
 
 66
 Some of the things I don't know obviously and I don't know what was really going on, I don't know what the files would reflect if I were to see the entire file. I don't know the role of the client in the matter. All I can do is look at what is presented to me and make the decisions required by Rule 11, in any event.
 
 
 67
 On April 19, 1993, the court entered its "Order Imposing Sanction Pursuant to Rule 11." It noted that, among other things, it had determined that plaintiffs violated Rule 11 by filing a Complaint that was not warranted by existing law. The court acknowledged receiving a letter and an affidavit from Mr. Kirchenbauer who was appearing pro se:
 
 
 68
 Lary Kirchenbauer has submitted an affidavit in which he attempts to show that the sanction should not be imposed against him. He states that he is not an attorney and has no basis to determine "whether legitimate claims have a legal cause of action without the benefit of legal counsel." Kirchenbauer further states that he relied solely on Jerome Wallach to determine whether he and Kirk Capital Corporation had a cause of action against defendants and that Wallach stated on many occasions that plaintiffs had "a substantial and legitimate basis for a legal claim ... under federal law."
 
 
 69
 Regarding plaintiffs' voluntary dismissal, Kirchenbauer states that Wallach advised him that Wallach had failed to file a discovery schedule as required by the court and that Wallach had decided to dismiss the case with an intention to refile it immediately rather than ask the court for an extension of time. Kirchenbauer states that at the time Wallach discussed this with him,It was clear to me at the time that Mr. Wallach had already executed a dismissal motion and was simply informing me of his decision. It certainly was clear that my permission or authorization was not being sought, and that the meeting was called simply to apprise me of the current status of the case.
 
 
 70
 * * * * * *
 
 
 71
 Although the Wallach Law Firm does not dispute Lary Kirchenbauer's assertions, I am convinced, based on a review of the file, that the Wallach Law Firm does not desire to get into an unseemly dispute with a client who is far more sophisticated in litigation matters than he wants me to believe. Plaintiff chose to pursue this case after having been advised by counsel that it was a very long shot, or his attorney failed to advise me of its tenuous character. In the first instance, plaintiff's responsibility for the sanction is clear. In the second, plaintiff must be held responsible for his attorney's actions because plaintiff hired the attorney.
 
 
 72
 The court cited and quoted from Davidson v. Allis-Chalmers, 567 F.Supp. 1532, 1544 (1983) for these last conclusions. The Davidson case was an employment discrimination case in which the employer prevailed and therefore sought attorneys fees under 42 U.S.C. Sec. 1988. The court concluded that the defendant was entitled to an award covering certain of its attorneys' fees and costs and then allocated responsibility between the plaintiff and his attorney. The language from Davidson quoted by the lower court here came from the case of Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). There the petitioner was arguing that the dismissal of his claim because of his counsel's unexcused conduct imposed on him, the client, an unjust penalty. The Supreme Court responded:
 
 
 73
 There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."
 
 
 74
 The principle enunciated by the Supreme Court simply does not apply in a Rule 11 sanction context. Otherwise every award against an attorney under Rule 11 could also be assessed against the client. Furthermore in Davidson there was evidence of the client's personal culpability in the record. There is none here.
 
 
 75
 Mr. Kirchenbauer may have wanted to extricate plaintiffs from the state court proceeding. Indeed, he may have had an improper purpose for so doing. However, if the facts alleged in the Complaint filed by the Wallach Firm would justify the relief sought then there would be no reason to sanction either Mr. Kirchenbauer or the Wallach Firm. The trouble here was: the facts alleged would not have formed a legal basis for the relief sought. This was an issue of law that the law firm, not the lay client, was called upon to make. The belief or suspicion that Mr. Kirchenbauer "is more sophisticated in litigation than he wants me to believe" is not enough. Mr. Kirchenbauer did not sign the Complaint and there is no factual basis for concluding that he did anything that would warrant any Rule 11 sanction. We therefore reverse the lower court's award of monetary sanctions against Mr. Kirchenbauer.
 
 CONCLUSION
 
 76
 For the reasons stated above the monetary sanction awarded against Mr. Kirchenbauer is reversed and the monetary sanction against the Wallach Firm is reduced to $8,603.25.
 
 
 
 *
 The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas sitting by designation
 
 
 [1]
 At page 67-68 of the Transcript of Hearing on Motion for Sanctions we find the following comment by the Court:
 Now, I must join the long line of judges, I guess, who have stated in a much more public forum than this the difficulties in applying Rule 11. This is an instance where the provisions of Rule 11 have to be implemented, and I don't make the findings I have with any enthusiasm.
 I know Mr. Wallach and his firm to be careful, effective, good lawyers, and I don't want anything I have said to suggest that I am commenting about anything other than the very specific circumstances of this case as have been presented to me in the briefing and in the other matters that are of record in this case.