In re Edwin Jordan MASTERS, M.D. and Jacqueline Gayle Masters, Debtors.

FIRST NATIONAL BANK OF SIKE-STON, n/k/a First National Bank of the Mid–South, Plaintiff,

v.

Edwin Jordan MASTERS, M.D. and Jacqueline Gayle Masters, Defendants.

Bankruptcy No. 93–10117–293.
Adversary No. 83–1139–293.

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

March 19, 1998.

John M. Toma, Eileen M. Love, Newman, Goldfarb, Freyman, Stevens & Klein, P.C., St. Louis, MO,Paul H. Berens, Bradshaw, Steele, Cochrane & Berens, Cape Girardeau,

MO, Maurice B. Graham, Graham Law Firm, St. Louis, MO, for Edwin Masters.

Gregory D. Willard, Carl A. Spector, Bryan Cave, L.L.P., St. Louis, MO, for First National Bank of the Mid–South.

James B. Spain, Spain, Merrell and Miller, Poplar Bluff, MO, for William H. Fisher, III.

Alan C. Kohn, Robert A. Useted, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, MO, for Kent Wunderlich.

Joel A. Kunin, Carr, Korein, Tillery, Kunin, Montroy & Glass, St. Louis, MO, for Pat Lea.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

Pending before the Court is Debtor's motion seeking sanctions against First National Bank of Sikeston (f/k/a First National Bank of the Mid–South) (the "Bank"), William H. Fisher, III, and Kent Wunderlich. The Court issued a Memorandum Opinion on January 14, 1998 which recounted the history of Debtor's motion for sanctions and the arguments Debtor and Respondents have asserted to support their respective positions. Therefore, the Court will not repeat that history in this Memorandum Opinion.

1. On December 29, 1997, Respondent William H. Fisher filed an objection to the supplemental interrogatories Debtor had served upon him in connection with Debtor's motion for sanctions. Specifically, Fisher objected to the interrogatory that asked him to divulge his net worth. Fisher argued that his net worth is irrelevant to the motion because the motion does not involve punitive damages.

2. On December 31, 1997, Respondent Kent Wunderlich filed an objection to the supplemental interrogatories Debtor had served upon him in connection with Debtor's motion for sanctions. Specifically, Wunderlich objected to those interrogatories that inquired of his net worth and whether he possessed malpractice insurance that might cover the alleged misconduct of Wunderlich. Wunderlich maintained that because the motion for sanctions does not involve punitive damages, his net worth is irrelevant. Wunderlich objected to the interrogatory that asked whether his malpractice insurance would "cover any liability arising from" his conduct in the adversary proceeding against Dr. Masters on the ground that it is vague and ambiguous.

3. The Court convened a status conference in Debtor's case on January 15, 1998. At that conference, the parties addressed the objections to Debtor's supplemental interrogatories and whether Wunderlich and Fisher could be questioned about their assets and net worth at scheduled depositions.

4. At the conclusion of the January 15 hearing, the Court instructed the parties to submit letters of authority supporting their positions regarding the discoverability of the respective net worths of Wunderlich and Fisher.

5. In his letter brief, Dr. Masters argues that Wunderlich and Fisher's net worths are relevant to the court's decision to assess sanctions under Bankruptcy Rule 9011. Debtor bases his contention of relevance on authority stating that Bankruptcy Rule 9011 empowers a court to assess a punitive sanction, or phrased slightly differently, that one goal of Bankruptcy Rule 9011 is to punish.

6. Wunderlich filed a letter of authority in which he argues that because Bankruptcy Rule 9011's primary purpose is to deter misconduct, this court is bound to assess the minimum sanction sufficient to deter the sanctionable conduct. Wunderlich does not absolutely deny the relevance of his net worth to the Court's assessment of a sanction. Instead, Wunderlich maintains that his ability to pay an award of sanctions is an affirmative defense he may assert, and that

although he may offer information regarding his financial status, he may not be compelled to provide such information. In making this argument, Wunderlich distinguishes between Bankruptcy Rule 9011, which he admits contains a punitive element, and traditional, punitive damages that are intended only to punish a party. Lastly, Wunderlich asked the Court to permit him to file his net worth under seal should the Court require him to disclose his net worth.

7. Fisher filed a letter of authorities in which he adopted the position Wunderlich set forth in his letter of authorities. In addition, Fisher argues that an award of sanctions will not effect Bankruptcy Rule 9011's primary goal of deterring sanctionable conduct because he is semi-retired and Wunderlich is not practicing law.

8. The Bank also submitted a letter of authorities addressing the discoverability of Wunderlich and Fisher's respective net worths.[1] The Bank notes that Masters seeks punitive damages payable to himself and protests that the matter will not be heard by a jury as it maintains Missouri Approved Jury Instruction 10.01 requires. Further, the Bank argues that, although some courts have utilized Bankruptcy Rule 9011 to impose fines and penalties, no court has employed the rule to award punitive damages to a party. To support its position that Bankruptcy Rule 9011 does not authorize an award of punitive damages, the Bank points to the Advisory Notes that accompanied the rule's amendment in 1993 that stated "if a monetary sanction is imposed, it should ordinarily be paid into Court as a penalty." Finally, the Bank argues that Federal Rule of Civil Procedure 11, and by extension Bankruptcy Rule 9011, does not authorize an award representing consequential damages.

## DISCUSSION

After reviewing the authorities cited by the parties, and conducting its own review of the law, the Court has concluded that Wunderlich and Fisher's objections to the interrogatories inquiring of their net worths must be sustained.[2]

■ Bankruptcy Rule 9011 (B.R. 9011) requires that "an appropriate sanction be imposed upon those who violate its requirements." A court imposing sanctions pursuant to B.R. 9011 has broad discretion to formulate the "appropriate" sanction. *Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1489 (8th Cir.1994)[3]; *In re KTMA Acquisition Corp.,* 153 B.R. 238, 268 (Bankr.D.Minn.1993) (sanctions under B.R. 9011). An appropriate sanction may consist of a discussion on the record, a reprimand, a monetary sanction, mandated legal education, *In re Cedar Falls Hotel Properties Ltd. Partnership,* 102 B.R. 1009, 1018 (Bankr.N.D.Iowa 1989) quoting *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3rd Cir.1986), or dismissal of the case. *Pope v. Federal Express Corp.,* 974 F.2d 982, 984 (8th Cir.1992). When a court imposes a monetary sanction, the court's discretion extends to directing to whom the sanction is to be paid. *Estate of Calloway v. Marvel Entertainment Group,* 9 F.3d 237, 241 (2nd Cir.1993); *In re Pierre,* 190 B.R. 462 (Bankr. S.D.Fla.1995).

■ In determining the appropriate sanction to impose under B.R. 9011, courts have been guided by the principle that the primary purpose of an award of sanctions under B.R. 9011 is to deter attorneys' and litigants' misconduct. *See Kirk Capital Corp.,* 16 F.3d at 1489 (primary purpose of Fed.R.Civ.P. 11 is to deter misconduct, not to compensate harmed party); *Brandt v. Schal,* 960 F.2d 640, 645 (7th Cir.1992); *Robeson Defense Comm. v. Britt,* 914 F.2d 505, 522 (4th Cir. 1990); *White v. General Motors Corp.,* 908 F.2d 675, 678 (10th Cir.1990). Many courts have reasoned that because the purpose of Rule 11 and B.R. 9011 is to deter misconduct,

---

1. The Court allowed the Bank to submit a letter brief addressing the discoverability of Wunderlich's and Fisher's respective net worths.

2. Although the parties discussed other issues in their letters of authority, this opinion is limited to the discoverability of the Wunderlich's and Fisher's respective net worths.

3. As the Court explained in its January 14 Order, cases decided under the version of Federal Rule of Civil Procedure 11 in effect between 1983 and 1993 are authoritative in applying the version of B.R. 9011 applicable to this case.

a sanctioning court should impose the least severe sanction necessary to achieve that goal. *See White,* 908 F.2d at 684; *Doering v. Union County Bd. Of Chosen Freeholders,* 857 F.2d 191, 196 & n. 4 (3rd Cir.1988). The Eighth Circuit, in contrast to the Third and Tenth Circuits, has suggested, but not mandated, that courts applying Rule 11 and B.R. 9011 impose the least severe sanction necessary to achieve deterrence. *Kirk Capital Corp.,* 16 F.3d at 1489.

■ Courts that have imposed monetary sanctions under Rule 11 or B.R. 9011 have recognized that a sanctioned party's ability to pay a monetary sanction is a factor to consider in assessing such a sanction. *See In re Rex Montis Silver Co.,* 87 F.3d 435, 440 (10th Cir.1996); *Pope,* 974 F.2d at 984 (remanding case to district court for consideration of attorney's ability to pay sanction imposed under Fed.R.Civ.P. 11); *White,* 908 F.2d at 685; *Hilton Hotels Corp. v. Banov,* 899 F.2d 40, 46 (D.C.Cir.1990); *In re KTMA Acquisition Corp.,* 153 B.R. at 269.

In *Pope,* the Eighth Circuit vacated an award of sanctions and remanded the case to the district court for reconsideration in light of the fact that the sanctioned party, Caranchini, had also been sanctioned by the District Court for the District of Kansas. 974 F.2d at 984. The Eighth Circuit directed the district court for the District of Missouri to consider how the "substantial Rule 11 sanction" the district court for the District of Kansas imposed on Caranchini for her misconduct before that court affected Caranchini's ability to pay a sanction the district court for the District of Missouri might impose. The Eighth Circuit also directed the district court for the District of Missouri to consider whether the sanction imposed by the district court for the District of Kansas was sufficient to deter Caranchini from future misconduct or whether another sanction would be necessary. Although the *Pope* court directed the district court, on remand, to consider Caranchini's ability to pay a monetary sanction, it did not address who bore the burden of producing evidence of Caranchini's ability to pay or whether that information could be compelled from Caranchini.

The Tenth Circuit has more directly addressed the manner in which evidence of a sanctioned party's ability to pay is to be presented to the court. *White,* 908 F.2d 675. The Tenth Circuit explained that one's "[i]nability to pay what the [sanctioning] court would otherwise regards as an appropriate sanction should be treated as a reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Id.* at 684–85. The Second Circuit seems to share the Tenth Circuit's view. *See Estate of Calloway,* 9 F.3d 237. In *Estate of Calloway,* the Second Circuit affirmed an award of sanctions the district court issued following against a defendant, LeFlore. The Second Circuit had previously remanded the case to the district court and suggested the district court consider the size of the sanctions award imposed on LeFlore in light of his financial status. On that remand, however, LeFlore "declined the [district court's] invitation" to submit a current financial statement, and the district court imposed the same sanction it had ordered before the remand. The Second Circuit affirmed the district court's decision.

■ The Court agrees with the approach espoused by the Tenth and Second Circuits. Viewing the financial status of Wunderlich and Fisher as an affirmative defense available to them leads to the conclusion that the Court should not compel them to divulge their net worths. Because the burden is upon the sanctioned party to present evidence of its inability to pay an award, this Court finds that disclosure of Fisher and Wunderlich's net worths cannot be compelled.

■ Courts have recognized the similarity between sanctions under B.R. 9011 or Rule 11 and punitive damages, *Kunstler,* 914 F.2d at 524 (Sanctions under Rule 11 are analogous to punitive damages), but the two are different and distinct. To the extent that any sanction is a penalty, the Court agrees that B.R. 9011 has a punitive component, however, as the Court noted above, the primary purpose of an award of sanctions under B.R. 9011 is to deter misconduct. In contrast to sanctions under B.R. 9011, an award of punitive damages seek primarily to punish

an offender for a transgression. Because punitive damage awards and sanction awards strive to fulfill different goals, the Court is not persuaded by Masters's contention that Wunderlich and Fisher can be compelled to disclose their respective net worths because such information is necessary to adequately effect the punitive component of B.R. 9011. Masters may recover punitive damages in a state court malicious prosecution action and in the course of such an action he may be able to compel Fisher and Wunderlich to disclose their net worths.

Lastly, the Court notes that because an award of sanctions is not a substitute for the damages recoverable through a malicious prosecution action, consequential damages are not a valid measure of an appropriate sanction. *In re Spectee Group, Inc.*, 185 B.R. 146, 161–62 (Bankr.S.D.N.Y.1995); *see also Kirk Capital Corp.*, 16 F.3d at 1491 ("Rule 11 is not a complete substitute for an abuse of process type cause of action."); *Elliott v. The M/V Lois B*, 980 F.2d 1001, 1007 (5th Cir.1993) ("Rule 11 sanctions should not be assessed as a substitute for tort damages."); *Chris & Todd, Inc. v. Arkansas Dep't of Fin. & Admin.*, 125 F.R.D. 491, 493 (E.D.Ark.1989) ("Rule 11 sanctions are not to be deemed a substitute for an action for malicious prosecution."); *West v. West*, 126 F.R.D. 82, 83 (N.D.Ga.1989) (Consequential damages not authorized under Rule 11).