Philip CARGILE, Plaintiff,

v.

VIACOM INTERNATIONAL,
INC., Defendant.

No. 5:00CV303–SPM.

United States District Court,
N.D. Florida,
Panama City Division.

Sept. 17, 2003.

Mark Thomas Sallee, Esq, Mark T. Sallee PA, Decatur, GA, for Plaintiff.

John Richard Smoak, Esq, John R. Smoak Jr. PA, Panama City, FL, Elizabeth A. McNamara, Esq, Davis Wright

Tremain LLP, New York, NY, for Defendant.

## ORDER ON SUMMARY JUDGMENT AND SANCTIONS

MICKLE, District Judge.

This cause comes before the court on the Motion for Summary Judgment (doc. 50) and Motion for Sanctions (doc. 68) filed by Defendant Viacom International, Inc. (Viacom). The principle issue is whether Viacom is entitled to judgment as a matter of law on Plaintiff's claims that Viacom violated an implied contract in fact and misappropriated trade secrets by using a family of cartoon characters created by Plaintiff to develop Viacom's Rugrats cartoon characters.

### I. Background

In March or April of 1991, Plaintiff Philip Cargile met with William Plymel of the Florida Film Commission. Cargile gave Plymel three or four sheets of drawings and explanations of some concepts for his Go–Burns cartoon characters. Cargile understood from his discussions with Plymel that Plymel would try to find a buyer for the cartoons and bring them into animation. Plymel specifically mentioned Nickelodeon, which is a programming channel of MTV Networks, a division of Defendant Viacom. In the meantime, Plymel instructed Cargile to copyright the cartoon and create something tangible such as a doll or a video that Plymel could use when dealing with prospective buyers.

In the Spring of 1992, Cargile met with Plymel again and gave him a copy of a Go–Burns video that Cargile produced. Plymel told Cargile that he had met with Nickelodeon and would be meeting with Nickelodeon again. Cargile heard nothing further from Plymel. He later learned that Plymel died and that the Florida Film Commission had disbanded.

Cargile claims that Plymel did in fact meet with Nickelodeon some time after Cargile's first meeting with Plymel in March or April of 1991. Cargile, however, has no direct evidence of a meeting. He has no information on the specific date or dates of any such meeting, who was present at the meeting, whether drawings or videos of the Go–Burns were delivered, or whether any agreements were made. As the basis for his claim, Cargile relies upon the statements Plymel made to him about meeting with Nickelodeon. He also relies upon similarities that he sees between his Go–Burns characters and Nickelodeon's Rugrats cartoon.

Based on these facts, Cargile alleges that Viacom misappropriated trade secrets (specifically, the concepts embodied in the Go–Burns) by using his concepts despite an implied expectation and obligation of confidentiality between Cargile and Viacom. Cargile also alleges that Viacom violated a contract implied in fact to pay Cargile for use of the Go–Burns characters.

Viacom has denied that anyone involved in the creation of the Rugrats knew about Cargile's Go–Burns, much less agreed in any way to keep the Go–Burns confidential or to pay Cargile. In fact, Viacom has produced unrefuted evidence that the Rugrats were developed by an independent production company in 1989. Thereafter, a pilot was produced in 1990. In August of 1991, the first episode of the Rugrats aired after being in production for at least a year. These dates rebut Cargile's claim that Viacom used the materials he provided to Plymel in March or April of 1991, or later in the Spring of 1992, to create the Rugrats.

Furthermore, Viacom argues that Cargile cannot show that Viacom actually used his ideas because the Rugrats and the Go–Burns bear no substantial similarity to

each other. Even if two of the Go–Burns characters have some of the same physical features as two of the Rugrats characters, as Cargile claims, any reasonable observer could not fail to see substantial differences overall. See exhibits to docs. 56 and 62.

Finally, Viacom argues that Cargile's claims for violation of trade secrets and contract implied in fact were not filed within the applicable limitations periods. Viacom notes that according to Cargile's own admissions, Cargile knew by December 17, 1997 about the Rugrats and therefore knew of any possible violation of trade secrets. Given the 3 year statute of limitations applicable to the trade secrets claim, Viacom argues that this claim is time barred.

With regard to Cargile's claim for contract implied in fact, it is subject to a 4 year statute of limitations. The claim is time barred because the alleged breach, i.e. use of the Go–Burns without paying Cargile, occurred at the latest on August 11, 1991, when the Rugrats first aired. Cargile's suit was filed over 9 years later, on December 29, 2000.

## II. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record "taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The burden is on the moving party to show that there are no genuine issues of material fact to be determined at trial.

*Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir.2000) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). In determining whether this burden has been met, the court views the evidence and all factual inferences in the light most favorable to the party opposing the motion, and resolves all reasonable doubts about the facts in favor of the nonmoving party. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999) (citing *Clemons v. Dougherty County*, 684 F.2d 1365, 1368–69 (11th Cir.1982)).

If the moving party has satisfied its burden, the burden shifts to the nonmoving party who must show "that summary judgment would be inappropriate because there exists a material issue of fact." *Mullins*, 228 F.3d at 1313. The burden can be met by presenting enough evidence to show that a reasonable jury could find for the nonmoving party. *Allen*, 121 F.3d at 646. The nonmoving party must present more than a scintilla of evidence in support of its position. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251, 106 S.Ct. 2505.

## III. Viacom's Entitlement to Summary Judgment

 Viacom is entitled to summary judgment on Cargile's claims based on the statute of limitations and the failure of Cargile to produce more than a scintilla of evidence that Viacom actually used the Go–Burns to create the Rugrats. In an apparent concession, Cargile has not refuted Viacom's statute of limitations argument. On this ground alone, summary judgment is warranted.

On the other grounds, Cargile continues to argue that the Go–Burns and Rugrats

are substantially similar. He also argues that it is possible Plymel contacted someone at Viacom soon after Cargile met with Plymel in March or April of 1991, and that Plymel, on Cargile's behalf, reached an implied agreement with Viacom regarding the purchase and use of the Go–Burns. Cargile further notes that Viacom could have used ideas from his Go–Burns to develop the Rugrats character "Chuckie," who was not present in the 1990 pilot video but appeared in the first episode in August of 1991.

The evidence Cargile has to support his claims is a mere scintilla. He relies on hearsay statements attributed to Plymel that Plymel met with someone from Nickelodeon. The hearsay statements, even if they are admissible, provide no details about when the meeting took place, who was present, and the substance of any agreements reached. Cargile also relies on similarities between the Go–Burns and the Rugrats. The similarities are slight, however, and they do not give rise to a tenable inference that Viacom used the Go–Burns to create the Rugrats character "Chuckie," as Cargile claims. Moreover, Cargile has no evidence to support his claim that he had an implied agreement with Viacom to maintain the secrecy of his Go–Burns or payment for their use.

Viewing the evidence and factual inferences in the light most favorable to Cargile, there is not a sufficient basis for his claims. Accordingly, Viacom's motion for summary judgment will be granted.

## IV. Rule 11 Sanctions

■ Viacom has moved for sanctions against Cargile and his lawyer, Mark Sallee, under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 allows courts to impose appropriate sanctions when "an at-

torney or party submits a pleading to the court that: (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir.2002). The obligations imposed by Rule 11 continue throughout the course of the litigation and sanctions can be imposed when a litigant continues to press a claim after learning that it ceases to have merit. Fed.R.Civ.P. 11, advisory committee's notes.

In this case, plaintiff's counsel Mark Sallee violated Rule 11(b)(2) and (3) by continuing to press Cargile's claims after learning that they ceased to have merit. Defense counsel specifically advised Sallee about the statute of limitations problem. Defense counsel also advised Sallee that the creation of the Rugrats predated Cargile's submission of his ideas to Plymel and that the creators of the Rugrats had no knowledge of the Go–Burns.

In mitigation of his action, Sallee submitted an affidavit stating that he advised Cargile to dismiss the case. See doc. 64. Sallee also limited his response in opposition to summary judgment to factual arguments that were marginally reasonable to make. The response, however, still prays that summary judgment be denied, and completely ignores the statute of limitations argument and arguments concerning the speculative basis for Cargile's claims.

Sallee's obligations under Rule 11 are inconsistent with his continued pursuit of Cargile's claims. When Sallee was unable to convince Cargile to voluntarily dismiss the suit, Sallee should have moved to withdraw as the attorney in the case, in accordance with his duties to the court under Rule 11 and the rules of professional conduct[1]. *Sherman v. Optical Imaging Sys.*,

---

1. *See* Georgia Rules of Professional Conduct 1.16 (lawyer shall not represent a client or shall withdraw from the representation of a client if the representation will result in violation of the Georgia Rules of Professional Conduct or other law);

*Inc.,* 843 F.Supp. 1168, 1182–83 (E.D.Mich. 1994) (lawyer should have client discontinue suit or seek to withdraw from representation once it is clear that the case lacks factual support or legal merit).

Sallee should not have continued with the case by filing a response, however tepid it was, opposing summary judgment and requesting that the case proceed to jury trial. By proceeding despite the statute of limitations problems and overwhelming lack of evidence, Sallee exhibited a "deliberate indifference to obvious facts" which justifies Rule 11 sanctions. *Riccard,* 307 F.3d at 1294.

■ In determining the appropriate sanction, Rule 11 provides that "sanctions are limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). While reasonable attorneys' fees can be imposed, "the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." *Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1490 (8th Cir.1994). "[S]election of the type of sanction to be imposed lies with the district court's sound exercise of discretion." *Riccard,* 307 F.3d at 1295.

In this case, the appropriate sanction to Sallee is this reprimand and warning to be mindful of and strictly abide by the provisions of Rule 11 in the future. A stiff monetary sanction, such as an award of fees and costs to Defendant, is not warranted.

There is no indication that Sallee has violated Rule 11 in the past. Sallee also advised his client to dismiss the case,

thereby fulfilling part of his obligations under Rule 11. Furthermore, the notice of sanctions was served upon Sallee on November 11, 2002, after Defendant had already filed its motion for summary judgment. Sallee's failure to withdraw from the case within the 21 day safe harbor period [2] provided in the rule did not cause substantial additional work by Defendants, aside from the filing of the motion for sanctions itself. Moreover, in response to the motion for summary judgment, Sallee limited his specific arguments to those that were marginally reasonable, although he did generally request that summary judgment be denied.

Finally as Defendant notes, sanctions are available against Cargile himself for maintaining a frivolous claim. The principal responsibility for the Rule 11 violation, however, does not lie with Cargile. It is unlikely that Cargile appreciated any distinction between his position, regarding the similarity of the Rugrats and his Go–Burns, with his ability to maintain a valid claim against Viacom for implied breach of contract and violation of trade secrets. While Sallee apparently advised Cargile to dismiss the case, Sallee himself did not withdraw. Given the situation, it does not appear Cargile realized that his case was factually and legally without merit.

"Typically, sanctions are levied against a client when he misrepresents facts in the pleadings." *Byrne v. Nezhat,* 261 F.3d 1075 (11th Cir.2001). "A client is also subject to sanctions when it is clear that he is the 'mastermind' behind the frivolous case." *Id.; see also Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558, 569

---

**2.** A party's motion for sanctions under Rule 11 "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense contention, allegation, or denial is not

withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R.Civ.P. 11(c)(1)(A).

(E.D.N.Y.1986). None of those circumstances are present in this case.

## V. Conclusion

Viacom is entitled to judgment as a matter of law in this case because Cargile's claims were not filed within the applicable statute of limitations period and because the evidence Cargile has to support his claims is not sufficient to sustain a genuine issue of material fact. Cargile's attorney, Mark Sallee, should have sought to withdraw from representation after he failed to convince Cargile to voluntarily dismiss this case. Rule 11 sanctions, in the form of this reprimand and warning to Sallee, is appropriate. No further sanctions are warranted. Accordingly, it is

ORDERED AND ADJUDGED:

1. Defendant's Motion for Summary Judgment (doc. 50) is granted.

2. Defendant's Motion for Sanctions (doc. 68) is granted as provided in this order.